## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PATRICIA G. DYE,

       Plaintiff,

v.                                               No. CIV 14-1000 JAP/GBW

ERNEST MONIZ, Secretary,
U.S. DEPARTMENT OF ENERGY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

Patricia G. Dye (Plaintiff) asserts claims against Ernest Moniz, Secretary, U.S.

Department of Energy (Defendant) of disability discrimination and retaliation under Title VII

and the Rehabilitation Act. COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND

RETALIATION ON THE BASIS OF DISABILITY (Complaint) (Doc. No. 1). Defendant seeks

summary judgment on both claims, arguing that Plaintiff has failed to exhaust her administrative

remedies and/or that she cannot establish the essential elements of her claims. DEFENDANT'S

MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM BRIEF IN SUPPORT

(Motion) (Doc. No. 29). Plaintiff asserts that she has raised genuine disputes as to the material

facts sufficient to preclude summary judgment. PLAINTIFF'S RESPONSE IN OPPOSITION

TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Response) (Doc. No. 35).

Defendant disagrees and asks the Court to dismiss Plaintiff's Complaint. DEFENDANT'S

REPLY TO HIS MOTION FOR SUMMARY JUDGMENT (Reply) (Doc. No. 36).

After carefully reviewing the pertinent law along with the briefs and exhibits, the Court finds no genuine disputes as to the material facts and will grant summary judgment in favor of Defendant. Accordingly, Plaintiff's Complaint will be dismissed with prejudice.

## Background

This lawsuit arises from Plaintiff's employment as a Physical Scientist in the Environmental Management (EM) division of the Department of Energy (DOE). The EM department is responsible for "the safe cleanup of the environmental legacy brought about from five decades of nuclear weapons development and government-sponsored nuclear energy research." Motion at 1. Plaintiff began working for the federal government in late 1979. From 2002 until she retired on June 30, 2012, Plaintiff worked as an EM Physical Scientist out of the Albuquerque, New Mexico office.

Plaintiff's disability discrimination and retaliation claims stem from Defendant's decision to move the Albuquerque EM employees to Los Alamos, New Mexico, a distance of about 100 miles. The reasons for the relocation were the completion of the environmental cleanup in Albuquerque and the shifting of the focus of EM work to Los Alamos.

In early 2011, Defendant announced its intention to reassign ten EM employees, including Plaintiff, to Los Alamos. The target date of reassignment and relocation was January 2012. However, that date was deferred, rescinded, and later revised, with relocation actually not accomplished until April 2013, some ten months after Plaintiff's retirement. Plaintiff contends that during the pendency of the planned reassignment, from early 2011 to her retirement in June 2012, the EM employees were expected to travel 200 miles between Albuquerque and Los Alamos two to three times a week. Plaintiff had hoped that Defendant would promptly execute the reassignment to Los Alamos so that Plaintiff would have the option to move to Los Alamos

for closer proximity to the EM work. She believed Defendant's 16 month delay in finalizing the EM reassignment to Los Alamos was "discriminatory, not just to me but to everyone." Motion at 4 (UMF 13).[1]

In early 2011, upon learning of the planned EM reassignment, Plaintiff alerted her supervisors that she could not travel to Los Alamos because of her diagnoses of Crohn's Disease and Celiac Disease. Plaintiff describes Crohn's disease as "an auto-immune digestive disease that can result in extended periods of diarrhea, gas, bloating, etc. It is a serious disease that can result in hospitalization and death…." Plaintiff's EEO Aff. ¶ 9 (Doc. No. 29–2). This condition interferes with Plaintiff's ability to travel "on demand" because she must remain close to a restroom. Plaintiff defines "on demand" as being required, for example, to travel to attend a meeting on a specific day at a pre-designated time. Plaintiff must have adequate notice to prepare for traveling to a scheduled meeting out of town because she cannot eat in the prior 24-36 hour period.

From early 2011 to early 2012, Plaintiff may have traveled to Los Alamos a total of six to eight times. Plaintiff's Dep. at 38 (Doc. No. 29–5). Plaintiff did not travel to Los Alamos again after March 2012, when she formally requested an accommodation. However, she contends *inter alia* that Defendant discriminated against her by giving her little to no meaningful work for a period of 16 months while she continued to work from Albuquerque. Despite electing to accept a $25,000 buyout and "voluntary retirement" in June 2012,[2] Plaintiff alleges that she was forced to resign because there were "no solutions on the horizon" to address her lack of meaningful work.

---

[1] Defendant supported UMF No. 13 by referring to Plaintiff's deposition at page 20, but that page was not included in Exhibit 5 (Plaintiff's Dep.). However, Plaintiff admitted UMF No. 13. Response at 2 (UMF No. 13).

[2] Plaintiff alleges that she was forced to retire a year and a half earlier than her planned date of January 2014, when she turned 65 years old. September 2012 EEO Complaint of Discrimination at 5 (Bates 000069) (Doc. No. 29–15).

This is the backdrop against which the Court analyzes Plaintiff's claims of discrimination and retaliation.

## Summary Judgment Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

## Undisputed Material Facts (UMFs)

### *Chronology of Employment and Disability-Related Requests*

On March 14, 2012, Plaintiff sent her supervisor Pete Maggiore an email requesting that she not be made to travel from Albuquerque to Los Alamos in relation to the planned reassignment of EM work to Los Alamos. In the email, Plaintiff requested "reasonable consideration under the ADA," and stated her belief that the "perfect accommodation" was to

work at the Albuquerque office without any regular or pre-scheduled travel to Los Alamos.

Plaintiff also represented that she "was very able and willing to perform 'normal' in-office work

for which I am trained or educated." Plaintiff's March 14, 2012 email (Doc. No. 29–12). Plaintiff

asserts that this email requested that she be assigned "meaningful" work in Albuquerque,

although there is no language in the email asking for a specific type of work. Plaintiff contends

that she had a number of conversations with supervisors in which she requested sufficient,

meaningful work assignments in Albuquerque.

During late 2011 and early 2012, Mr. Maggiore gave Plaintiff various work assignments,

some of which Plaintiff declined because she felt she was not qualified to handle them or

because, in Plaintiff's view, the assignments turned out to require travel. Subsequent to

Plaintiff's March 14, 2012 request, Mr. Maggiore did not require Plaintiff to travel to Los

Alamos and he attempted to find work assignments that Plaintiff could perform from the

Albuquerque office. Following Plaintiff's March 14, 2012 request, Plaintiff's work location

remained in the Albuquerque office.

But, Plaintiff disagrees that the assigned work projects could all be performed from

Albuquerque. For example, with respect to one assignment, Plaintiff attempted to work by

telephone only to be asked by the person she had contacted to come to Los Alamos to meet.

Plaintiff had to "beg off" attending several scheduled meetings due to illness. Plaintiff's Dep. at

62–63 (Doc. No. 29–7). Plaintiff also alleges that she was not given sufficient, meaningful work

that she could perform while in Albuquerque. According to Plaintiff, "meaningful work" should

match her experience and pay grade and benefit taxpayers. *Id.* Plaintiff contends that she was

given very little work and felt frustrated and demeaned "in having to sit in her cubicle nine hours

a day with nothing to do." *Id.*

On April 23, 2012, Plaintiff received a Memorandum from the DOE stating that her position was one of 156 positions identified for a possible buyout and early retirement. DOE Memorandum (Doc. No. 29–13). In order to obtain a buyout of $25,000, the required separation date was June 30, 2012. The Memorandum clearly advised that "Acceptance of an offer for buyout is strictly voluntary and no employee will be coerced into retiring or resigning." On May 15, 2012, Plaintiff signed a Voluntary Early Retirement form and retired, effective June 30, 2012. EEO Notice of Final Decision at 2 (Doc. No. 29–18); Request for Personnel Action (Doc. No. 29–1).

### *Work Performance*

Plaintiff states that during her 32-years with the government she always had received "at least a 'Fully Meets' in every section of every performance evaluation and that she received numerous outstanding ratings over the years." September 2012 EEO Complaint of Discrimination at 4 (Doc. No. 29–15). However, Plaintiff contends that in late 2011, supervisor George Rael gave her a "needs improvement" rating in a portion of her performance appraisal.[3] Plaintiff's Dep. at 60 (Doc. No. 29–7). Plaintiff told Mr. Rael: "… I don't know how you can do this, because I've asked for work that I can do from Albuquerque, and the work you say I can do from Albuquerque, I've had issues with." *Id.* In discovery responses, Plaintiff represents that Mr. Rael "was not given to changing ratings," but that they had agreed Plaintiff's rating would "likely change when we were relocated to Los Alamos after the first of the year [2012]." Response to Interrogatory No. 16 (Doc. No. 29–3).

In early 2012, Mr. Maggiore was working on Plaintiff's "midyear performance evaluation," and according to Plaintiff, Mr. Maggiore said "you got a needs improvement in your last performance review, and you're well on your way to that same needs improvement now. So

---

[3] The parties did not attach any performance evaluations as exhibits to their briefs.

I'm going to issue a letter of performance improvement – I think it's called a PIP." Plaintiff's Dep. at 61 (Doc. No. 35–1). Plaintiff telephoned Mr. Maggiore to say she did not believe she deserved a "needs improvement" rating and that it "border[ed] on retaliation" "for not being able to drive to Los Alamos two to three times a week." *Id.* However, Plaintiff never received Mr. Maggiore's "performance improvement letter" because of the timing of Plaintiff's June 2012 retirement. *Id.* In a later EEO filing, Plaintiff described the "needs improvement" rating as "threatened" rather than a rating she actually received. September 2012 EEO Complaint of Discrimination at 4 (Doc. No. 29–15). Thus, the record does not support a finding that Plaintiff actually received a "needs improvement" rating in 2012. Even the 2011 "needs improvement" rating was subject to change according to Plaintiff's deposition.

### *EEO Complaints of Discrimination*

On April 12, 2012, Plaintiff contacted an EEO Counselor to discuss her complaints. EEO Notice of Amended Acceptance/Dismissal of Formal Complaint of Discrimination (Doc. No. 29–17). On June 12, 2012, Plaintiff filed her first of two EEO Complaints of Discrimination with the Department of Energy Office of Civil Rights, alleging discrimination. June 2012 EEO Complaint of Discrimination (Doc. No. 29–14). In the description of her discrimination claim, Plaintiff referred to her March 2012 request for a reasonable accommodation and the work assignments that she contended were not responsive to her accommodation request or that she believed required her to travel to Los Alamos. Plaintiff represented that Defendant ignored her requests for a reasonable accommodation and did not assign meaningful work for her to do in the Albuquerque office for a period of 15 months. *Id.* at 4. Plaintiff also alleged that her health information was shared with several other employees.

On September 14, 2012, Plaintiff filed a second EEO Complaint of Discrimination, alleging discrimination and retaliation. September 2012 EEO Complaint of Discrimination (Doc. No. 29–15). Plaintiff continued to allege discrimination based on a physical disability but added a claim of retaliation for filing the June 2012 EEO Complaint. Plaintiff believed she was forced to retire "by not being given any meaningful assignments for some 16 months." *Id.* at 2.

Plaintiff posits that Defendant's alleged retaliatory conduct took the form of "no action." *Id.* at 3. According to Plaintiff, no one contacted her to discuss any of the possible accommodations; this "lack of communication" constituted a "clear violation of the [ADA]" *Id.* Plaintiff also claimed that Defendant's disregard for her accommodation request and the assignment of tasks that required travel constituted a "hostile work environment." *Id.*

On September 25, 2012, the EEO Manager sent Plaintiff a written description of the issues accepted for an investigation of her complaints. EEO Notice of Amended Acceptance/Dismissal of Formal Complaint of Discrimination (Doc. No. 29–17). The EEO Manager explained that any complaints occurring earlier than February 27, 2012, 45 days before Plaintiff contacted the EEO Counselor on April 12, 2012, would be dismissed. On August 7, 2014, the EEO issued a Final Agency Decision finding no evidence of disability discrimination, constructive discharge, or retaliation. EEO Notice of Final Agency Decision (Doc. No. 29–18).

## Discussion

### I.   **Exhaustion of Administrative Remedies**

### A.   <u>Legal Standard</u>

Under Title VII, it is well established that  "exhaustion of administrative remedies is a prerequisite to suit" in federal employment cases. *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012) (citation omitted). The Rehabilitation Act contains a similar exhaustion

requirement. *Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir. 1997) (citations omitted); *Johnson v. Orr*, 747 F.2d 1352, 1356–57 (10th Cir. 1984). Generally, a complainant must exhaust administrative remedies as to each discrete instance of discrimination or retaliation. *Apsley*, 691 F.3d at 1210 (citation omitted); *Marquez v. Johnson*, 545 F. App'x 735, 738 (10th Cir. 2013) (citation omitted). The purpose of the exhaustion requirement is to give the charged party notice of the alleged violations and to give the investigative agency an opportunity to conciliate the claims. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998).

A federal employee, like Plaintiff, must contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). The failure to meet the 45-day deadline with respect to allegations of discrimination bars an employee from pursuing that claim in federal court. *Dimsdale v. Peters*, 217 F. App'x 743, 745–46 (10th Cir. 2007). The 45-days begin to run when an employee becomes aware of the alleged unlawful conduct. The investigative agency will extend the 45-day limit under limited circumstances. 29 C.F.R. § 1614.105(a)(2).

B.   Analysis

Plaintiff first contacted an EEO Counselor on April 12, 2012. Thus, Defendant contends that any allegations of wrongdoing that occurred before February 27, 2012 are unexhausted and cannot be considered in support of Plaintiff's claims. Motion at 11.

Plaintiff does not dispute the date she contacted the EEO Counselor or the 45-day computation. Nor does Plaintiff allege that she can satisfy the requirements under 29 C.F.R. § 1614.105(a)(2) for extending the 45-day limitation period. However, she contends that the Court can consider her allegedly negative performance evaluation in 2011, the threatened PIP in 2012, and the lack of meaningful work assignments for over a year based on the existence of a

"continuing violation." Response at 7–8. Plaintiff represents that "hostile work environment claims" like hers must be viewed under a totality of the circumstances. *Id.* at 8.

In support, Plaintiff relies on *Nat'l R.R. Passenger Corp. v. Morgan* ("*Morgan*"), 536 U.S. 101, 115 (2002), wherein the United States Supreme Court instructed that "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." According to Plaintiff the failure to assign meaningful work to her was "repeated over and over," and therefore, constituted a continuing violation. Response at 7. Similarly, Plaintiff believes that the 2011 negative performance evaluation, while not resulting in any disciplinary action or loss in pay, was a continuing violation because she received a threatened PIP in 2012. *See* Response at 7–8.

In order to determine whether there was a continuing violation that would allow the Court to consider all of Plaintiff's allegations, the Court must evaluate Plaintiff's assertion of a hostile work environment. A hostile work environment occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citation omitted). *See Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (same). With respect to a hostile work environment claim, it is true that an employee need only comply with time constraints "as to any one act that is part of the hostile work environment." Under those circumstances, the Court will consider the entire time period of the hostile work environment. *Morgan,* 536 U.S. at 117–18.

Plaintiff's allegations of a hostile work environment fall far short of demonstrating "severe or pervasive" discrimination in the workplace. For example, two negative performance evaluations, while unpleasant, are not uncommon in the work place. Stated differently, two less-

than-perfect performance evaluations, without any changes in pay or job status, may be stressful

and disappointing, but they do not evince an abusive working environment "permeated with

discriminatory intimidation, ridicule, and insult." *Compare Davis v. U.S. Postal Serv.*, 142 F.3d

1334, 1341 (10th Cir. 1998) (finding that allegations of unwelcome hugging and kissing, along

with an incident described as an assault, were sufficient to withstand summary judgment). In

contrast, "[n]ormal job stress does not constitute a hostile or abusive work environment." *Trujillo*

*v. Univ. of Colo. Healthcare Sci. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998). Similarly,

Plaintiff's disagreement with her supervisors' review of her performance is not evidence of a

hostile work environment. *See Simms v. Okla. ex rel Dept. of Mental Health*, 165 F.3d 1321,

1329 (10th Cir. 1999) (employee's own opinions about his qualifications do not give rise to a

material factual dispute), *abrogated on different grounds by, Martinez v. Potter,* 347 F.3d 1208,

1210–11 (10th Cir. 2003). Moreover, Plaintiff has supplied no evidence that she was subjected to

physically threatening or humiliating behavior, nor has Plaintiff alleged that she was the recipient

of any hostile, let alone offensive utterances. While Plaintiff was unhappy with her work

environment, the Court is not in the business of guaranteeing "a utopian workplace, or even a

pleasant one." *Trujillo*, 157 F.3d at 1214 (citation omitted).

     In addition, the fact that Plaintiff was unsatisfied with her work assignments and found

her work to be inadequate or to lack meaningfulness simply does not constitute evidence of an

actionable hostile work environment or of demonstrably severe and inappropriate conduct that

the law prohibits. Plaintiff has not identified any legal support for the proposition that an

employer must give its employees meaningful work or work that an employee deems satisfying.

Nor has Plaintiff linked her allegations of lack of meaningful work to evidence of disability

discrimination or retaliation for engaging in protected conduct. This is particularly true in light of

undisputed evidence that Defendant gave Plaintiff several work assignments that she rejected because <u>she</u> decided she was not qualified to do the work or because <u>she</u> believed the work required travel to Los Alamos. *See, e.g.,* Plaintiff's Dep. at 62 (Doc. No. 29–7) (when given an assignment of the "50-year environmental plan," which was of "utmost importance to the site manager," Plaintiff stated she "could not do the job." "It's not something you can do over the phone from Albuquerque."); Plaintiff's EEO Aff. ¶ II32 (Doc. No. 29–2) (Plaintiff did not feel it was "appropriate for [her] to be a part of the meetings for the 50-Year Study because [she] might have to leave several times during the meetings and might have a problem getting to the meetings on time."); Plaintiff's Response to Interrogatory No. 16 (Doc. No. 29–3) (describing the 50-year environmental plan as a "no-win assignment" because Plaintiff had little environmental experience when the project "appeared to require intimate knowledge of the laboratory as well as best practices in the environmental field."); Plaintiff's Dep. at 50 (Doc. No. 29–6) (as for an assigned "quality program," Plaintiff stated she had "never done quality in my life …."); *Id.* at 64, 65 (although Mr. Maggiore gave Plaintiff tasks that he believed could be handled from Albuquerque, Plaintiff, "indeed … didn't think so." Plaintiff felt she was not familiar with the project's requirements and she described herself as someone who "like[d] to do business face-to-face." While video-conferencing was an option, Plaintiff did not believe it was "an end-all be-all."). These are examples of projects being assigned to Plaintiff that she decided were not appropriate for one reason or another.

Not only has Plaintiff failed to present evidence of a continuing violation in support of a hostile work environment claim, two out of three of the actions about which complains, the 2011 and 2012 performance evaluations, are separate, discrete employment actions, which were identifiable and had to be administratively exhausted. *See Morgan.*, 536 U.S. at 114 ("Discrete

acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."). In other words, to the extent Plaintiff found the two performance evaluations discriminatory or retaliatory, Plaintiff could easily identify the dates of the offensive actions and, accordingly, she was required to exhaust her administrative remedies within 45 days of those events.

The same reasoning applies to Plaintiff's allegations that she was not given meaningful work assignments for a specified period of time. Plaintiff has alleged that she asked her supervisors on a number of occasions for work and that her supervisors did not give her work that she felt she could perform or that she found meaningful. She knew of the dates she spoke to supervisors and of their allegedly unsatisfactory responses. *See, e.g.,* Plaintiff's Response to Interrogatory No. 15 (Doc. No. 29-3) (Plaintiff first asked Mr. Maggiore for a reasonable accommodation in August 2011 and had several other discussions with Mr. Maggiore prior to her March 2012 email); *Id.* (Response to No. 16) (starting in April 2011, Plaintiff had requested reasonable accommodations for a disability but was not given a reasonable accommodation and instead, received a "Needs Improvement" performance evaluation); Plaintiff's Dep. at 60 (Doc. No. 29–7) ("as we approached the early part of 2012, it was pretty obvious to me that I was not getting any meaningful work, that they were ignoring me, and that I was sitting in Albuquerque looking at four cube walls nine hours a day …."); June 2012 EEO Complaint of Discrimination at 4 (Doc. No. 29–14) (as of about January 2012, Plaintiff claimed she was forced to withdraw from a work assignment due to her travel requirements that were ignored). Clearly, Plaintiff was able to identify all of these dates and, consequently, was required to exhaust her administrative remedies in a timely fashion.

The Court concludes that Plaintiff failed to administratively exhaust her complaints about the 2011 and 2012 performance evaluations and about any incidents that occurred before February 27, 2012, including Defendant's failure to provide meaningful work to Plaintiff. *See Morgan*, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.") Thus, the Court need not consider allegations in support of the disability discrimination and retaliation claims that predate February 27, 2012. The Court will, however, examine all allegations of unlawful conduct that occurred between February 27, 2012 and June 30, 2012, including allegations about Plaintiff's work assignments.

II.    **Disability Discrimination**

A.    Legal Standard

The Rehabilitation Act prohibits the federal government from discriminating against an "otherwise qualified individual with a disability" or from failing to provide a reasonable accommodation to an employee who is disabled within the meaning of the Act. 29 U.S.C. § 794(a); *McGeshick v. Principi*, 357 F.3d 1146, 1149 (10th Cir. 2004). To establish disability discrimination under the Rehabilitation Act, a plaintiff must show: "(1) that the [she] is disabled under the Act; (2) that [s]he would be "otherwise qualified" to participate in the program; (3) that the program receives federal financial assistance (or is a federal agency); and (4) that the program has discriminated against the plaintiff." *Id.* at 1150. In addition, a plaintiff generally must show that she has suffered an adverse employment action to demonstrate discrimination. *See, e.g.*, *E.E.O.C. v. C.R. England, Inc*., 644 F.3d 1028, 1038 (10th Cir. 2011) (applying

requirement to ADA discrimination claim);[4] *Massari v. Potter*, No. 04-CV-02306-EWN-MJW, 2006 WL 318658, at *7 (D. Colo. Feb. 9, 2006) (applying requirement to Rehabilitation Act discrimination claim). An alternative is to show that the plaintiff was subjected to a hostile work environment. *Kaufman v. Univ. of Colo. at Boulder*, No. 15-CV-00406-LTB-NYW, 2015 WL 7014440, at *5 (D. Colo. Nov. 12, 2015) (unpublished) (citations omitted).

When a plaintiff has no direct evidence of disability discrimination, as is true here, the Court analyzes her claim under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this rubric, if a plaintiff establishes the elements of a *prima facie* case of disability discrimination, the burden shifts to the employer to a articulate legitimate, non-discriminatory reason for its actions. *Id.* at 802–03. If the defendant succeeds in offering such a reason, the burden shifts back to the plaintiff to show that the defendant's stated reason is merely "pretextual." *Id.* at 804–05. For example, a plaintiff might establish pretext "by showing the defendant's proffered non-discriminatory explanations for its actions are 'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief.'" *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (citations omitted).

B. <u>Analysis</u>

For purposes of the Motion, Defendant concedes that Plaintiff appears to be an individual with a qualifying disability under the Rehabilitation Act. Motion at 12. However, Defendant argues that Plaintiff has presented no evidence demonstrating that Defendant discriminated against her because of a disability or that Defendant failed to accommodate her disability. *Id.* Defendant also contends that Plaintiff has no evidence of an adverse employment action, and that

---

[4] Because the ADA and the Rehabilitation Act involve the same substantive standards, courts typically analyze the two claims together. *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Public Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009) (citation omitted).

even if she could show she was treated differently due to a disability, Defendant had legitimate business reasons for its actions. *Id.*

Plaintiff argues that she suffered an adverse employment action vis-à-vis Defendant's failure to provide adequate, meaningful work to her, which Plaintiff characterizes as "definitely a change in her employment status." Response at 9. She contends that "the poor performance evaluations and being threatened with a [PIP] certainly constitutes [sic] an adverse employment action." *Id.* And, she asserts that a hostile work environment led to her forced retirement. *Id.* In addition, Plaintiff claims that Defendant failed to provide a reasonable accommodation.

### 1. *Adverse Employment Action*

The Tenth Circuit Court liberally defines an adverse employment action, and a court examines whether a certain decision constitutes an adverse action on a case by case basis. *Sanchez v. Denver Pub. Sch*., 164 F.3d 527, 532 (10th Cir. 1998). An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007). At a minimum, a plaintiff must show an "objective demotion," or tangible change, such as a decrease in pay or a material change in duties; something beyond "a mere inconvenience or alteration of job responsibilities." *Sanchez*, 164 F.3d at 532; *Daniels v. United Parcel Serv., Inc*., 701 F.3d 620, 636 (10th Cir. 2012). The Tenth Circuit instructs that "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Couture v. Belle Bonfils Mem'l Blood Ctr*., 151 F. App'x 685, 690 (10th Cir. 2005) (citation omitted). Moreover, "[m]ere dissatisfaction with the job to which an ADA

16

plaintiff has been reassigned is insufficient to establish that the reassignment constituted an adverse employment action." *Id. See also James v. James*, No. 13-CV-03481-MSK-CBS, 2015 WL 5321340, at *8 (D. Colo. Sept. 14, 2015) (unpublished) ("Purely subjective injuries, such as dissatisfaction with a reassignment or loss of reputation are not adverse actions."); *Hill v. Rayboy–Brauestein*, 467 F. Supp. 2d 336, 352 (S.D.N.Y. 2006) ("change in job responsibilities" and "underutilization of Plaintiff's skills" not adverse employment actions unless "accompanied by materially adverse changes in employment, such as demotion or loss of wages").

a. <u>Meaningful Work; Performance Evaluations</u>

The Court has carefully examined Plaintiff's complaints of lack of meaningful work for the pertinent time frame. While Plaintiff was unhappy and unsatisfied with her work projects, these complaints are "purely subjective injuries" that are not accompanied by any materially adverse changes in employment. Plaintiff summarily asserts that the lack or work was "definitely a change in her employment status," without explaining how her employment status changed. Plaintiff was not demoted and did not lose any wages. The alteration of job responsibilities and her feelings of being frustrated and demeaned simply are not, without more, evidence of a "significant change in employment status."

The same is true for the 2011 and 2012 performance evaluations. Even if the Court were to consider these allegations, some of which were not exhausted, Plaintiff has failed to show how the evaluations constituted "significant" or "materially adverse" changes to her employment status. The 2011 performance evaluation, in Plaintiff's own words, was subject to change. Response to Interrogatory No. 16 (Doc. No. 29–3). The 2012 performance evaluation or PIP was threatened but did not actually occur. Although a negative performance evaluation may amount to an adverse employment action under certain circumstances, the Tenth Circuit Court of

Appeals has instructed that a negative evaluation or written warning alone does not constitute an adverse employment unless "it effects a significant change in the plaintiff's employment status….", for example, by "affect[ing] the likelihood that the plaintiff will be terminated…." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citation omitted). *See Grube v. Lau Indus. Inc*., 257 F.3d 723, 729 (7th Cir. 2001) (noting that "unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence" will not amount to an adverse employment action."). The Court concludes that Plaintiff's performance evaluations, either singly or in combination, do not constitute an adverse employment action. The only other adverse employment action that Plaintiff identifies in her Response pertains to her allegations of a hostile work environment that led to Plaintiff's forced retirement or to her "constructive discharge."[5] Response at 9.

### b. Constructive Discharge/Hostile Work Environment

A constructive discharge may constitute an adverse employment action. *Fischer v. Forestwood Co*., 525 F.3d 972, 980 (10th Cir. 2008). "Even if an employee resigns, the plaintiff may still satisfy the adverse employment action requirement by demonstrating that [she] was constructively discharged." *Id.* at 980. However, a plaintiff's burden in proving a constructive discharge is substantial. *Id.* For example, a plaintiff must show that the "employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the

---

[5] Plaintiff initially identified two other possible adverse employment actions, including her failure to receive a current job description and Defendant's alleged disclosure of Plaintiff's health situation to two employees. *See* EEO Notice of Amended Acceptance/Dismissal of Formal Complaint of Discrimination (Doc. No. 29–17). Defendant challenged both of these allegations, Motion at 14–15, but Plaintiff did not address Defendant's arguments, Response at 8–9. By failing to respond to Defendant's arguments, Plaintiff has abandoned the position that these allegations amounted to adverse employment actions. *See Maestas v. Segura*, 416 F.3d 1182, 1190 n. 9 (10th Cir. 2005) (plaintiffs abandoned claims "as evidenced by their failure to seriously address them in their briefs"). Plaintiff also alleged that Defendant did not engage in the required interactive process with respect to her request for a reasonable accommodation. Yet, Plaintiff represented in her EEO Affidavit that Mr. Maggiore responded to her March 2012 email within "five to ten days" and that Plaintiff had not been required to travel to Los Alamos after she sent him the email. EEO Aff. ¶ 33, Plaintiff's Dep. at 38. Moreover, Plaintiff's Response made no mention of the interactive process allegation and the Court deems Plaintiff has abandoned it as well.

employee's position would feel forced to resign." *Id.* (citation omitted). Stated differently, the Tenth Circuit has held that constructive discharge includes situations where the employee is "faced with a choice between resigning or being fired." *Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 978 (10th Cir. 1996).

Plaintiff alleges that she was forced to retire because Defendant required her "to sit in a cubicle for nine hours a day for over a year with little or no work," "ignored" her and her requests for additional work, and "discipline[ed] her for performance for the first time in a long federal government career." Plaintiff represents that a reasonable person facing these circumstances would have had no choice but to resign. Response at 9. Plaintiff also characterizes these same allegations as constituting a hostile work environment.

In addressing the exhaustion argument, the Court already reviewed these identical allegations before determining that Plaintiff could not establish a hostile work environment for purpose of showing a continuing violation. *See supra*. The same is true with respect to Plaintiff's position that a hostile work environment forced her to retire. Plaintiff has failed to raise a genuine dispute of material fact that her personal displeasure with the work assignments or the lack of work constituted "working conditions so intolerable that a reasonable person" would have felt no choice but to resign. Moreover, the undisputed evidence is that Plaintiff signed a "buyout" or "early retirement" form stating that her decision to retire was voluntary. There simply is no compelling evidence that Plaintiff was coerced into accepting an early retirement buyout in the amount of $25,000.

Similarly, Plaintiff has not raised a genuine dispute of material facts to show a constructive discharge. A constructive discharge has been characterized as an "aggravated" case of hostile work environment. *Hall v. U.S. Dep't of Labor, Admin. Review Bd.*, 476 F.3d 847, 851

(10th Cir.) (citation omitted), *cert. denied*, 552 U.S. 993 (2007). Thus, it follows that since Plaintiff has no evidence of a hostile work environment, she cannot satisfy her "substantial" burden of demonstrating a constructive discharge.

### 2. *Failure to Accommodate*

In order to prevail on a failure to accommodate claim, Plaintiff must demonstrate that she is disabled and "otherwise qualified" to perform a job. She also must show that she requested a plausibly reasonable accommodation. *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012). Defendant does not dispute the first two elements but contends that it provided a reasonable accommodation in response to Plaintiff's March 2012 email by not requiring Plaintiff to travel to Los Alamos and by giving her work assignments that Defendant believed she could perform from the Albuquerque office. Thus, Defendant contends that Plaintiff has no evidence that Defendant failed to provide a reasonable accommodation. Motion at 18–19.

Plaintiff argues that Defendant only responded to the restricted travel portion of her request and that Defendant failed to give her appropriate work assignments that she could complete in Albuquerque. Response at 11. Plaintiff's arguments regarding accommodation, like many of her arguments, are repetitive and simply re-allege that she was forced to sit in a cubicle for nine hours a day with little or no work. Plaintiff again asserts that Defendant's actions amounted to an intolerable, hostile work environment where Plaintiff was humiliated and ignored. *Id.*

Plaintiff has failed to raise a genuine dispute of material fact as to the accommodation claim. The undisputed material facts are that Defendant did not require Plaintiff to travel to Los Alamos after her accommodation request and that Defendant assigned Plaintiff a number of projects for her to perform in Albuquerque. Plaintiff concedes that Defendant assigned work for

her and admits that she sometimes declined to do certain projects based on her evaluations of the work and personal preferences. *See* discussion *supra*. While Plaintiff clearly was unhappy with her work assignments, dissatisfaction with her work alone does not demonstrate that Defendant failed to accommodate her request.

The Court concludes that Defendant's Rehabilitation Act disability discrimination claim must be dismissed. In sum, without evidence of an adverse employment action, Plaintiff cannot satisfy the prima facie elements of a disability discrimination case. Even if Plaintiff could raise a genuine dispute of material facts with respect to an adverse employment action, Defendant articulated legitimate non-discriminatory reasons for reassigning Plaintiff's tasks and duties based on the shift of EM work to Los Alamos, a decision that that affected all EM employees. Plaintiff's Response fails to address the issue of pretext or to advance an argument that Defendant's stated reasons for its actions were "unworthy of belief." In addition, Plaintiff did not raise a genuine dispute of material fact regarding the accommodation claim. Therefore, the Court will grant summary judgment in favor of Defendant and will dismiss the Rehabilitation Act disability discrimination claim with prejudice.

### III.    Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must show "(1) a protected employee action; (2) an adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action." *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007). If Plaintiff satisfies her *prima facie* case of retaliation, Defendant must articulate a legitimate, non-retaliatory reason for the adverse employment action. *See McDonnell Douglas Corp.*, 411 U.S. at 802. If Defendant provides evidence of a legitimate business-related reason for the adverse

action, Plaintiff must respond by showing that Defendant's asserted reason for the adverse action is pretextual. *See Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999), *cert. denied*, 529 U.S. 1110 (2000).

Plaintiff argues that she suffered retaliation in response to her protected activity of requesting an accommodation in her March 14, 2012 email.[6] Response at 11. *See Otero v. N.M. Corrections Dep't*, 640 F.Supp.2d 1346, 1356 (D.N.M. 2009) ("a request for accommodation in and of itself can be a protected activity under the ADA"). Plaintiff contends that Defendant's actions of placing her in a "hostile work environment" and forcing her to retire constituted adverse employment actions. Response at 12.

The Court has already determined that Plaintiff did not raise a genuine dispute of material facts as to the existence of a hostile work environment or a constructive discharge. *See* discussion *supra*. The Court will not repeat its reasoning here but once again finds that Plaintiff has not raised a genuine dispute of material fact that she encountered a hostile work environment or a work situation that was so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign. Thus, Plaintiff has failed to raise genuine issues of material fact with regard to the existence of an adverse employment action.

Even if Plaintiff could establish evidence of an adverse employment action, she fails to raise genuine factual disputes as to the existence of a causal connection between the March 2012 accommodation request and any alleged adverse actions. A defendant's retaliatory motive may be inferred when an adverse action closely follows protected activity. *Chavez v. City of Arvada*, 88 F.3d 861, 866 (10th Cir. 1996), *cert. denied*, 519 U.S. 1056 (1997). Unless the adverse action

---

[6] Plaintiff's initial retaliation claim presented to the EEO alleged that she was retaliated against for filing an EEO complaint. September 2012 Complaint of Discrimination at 3 (Doc. No. 29–15). In the present briefing, Plaintiff identifies only the accommodation request as a protected activity in support of the retaliation claim. Thus, Plaintiff is deemed to have abandoned any claim of retaliation based on the filing of an EEO complaint.

is very closely connected in time to the protected activity, a plaintiff must rely on additional

evidence beyond temporal proximity to establish causation. *Conner v. Schnuck Markets, Inc.*,

121 F.3d 1390, 1395 (10th Cir. 1997). *See Sunderman v. Westar Energy, Inc.*, 307 F. App'x 224,

229 (10th Cir. 2009) ("[F]or a protected activity to cause the adverse employment action, the

adverse action must necessarily occur after the protected activity.").

  Plaintiff does not offer any evidence specifically linking an alleged adverse action to her

March 2012 accommodation request. Instead, she repeats her mantra of allegations as if they

somehow evince a causal connection, i.e., being assigned little or no work that she could perform

in Albuquerque despite repeated requests for work; having to sit in a cubicle for nine hours a

day; receiving two negative performance evaluations; and being forced into retirement. Response

at 12. But, there is no evidence connecting the supposed adverse actions to her accommodation

request.

  In fact, Plaintiff contended that she faced frustrating and demeaning circumstances where

she had little or no work "for 16 months, March 2011 through June 2012." September 2012 EEO

Complaint at 5. The alleged lack of meaningful work assignments predated Plaintiff's March

2012 accommodation request. The same is true as to the performance evaluations. They both

appear to precede the March 2012 accommodation request, although the date of the 2012

evaluation is unclear. *See id.* at 4. Moreover, while Plaintiff now alleges that her "forced

retirement" is causally connected to her March 2012 accommodation request, she earlier

represented that she was forced to retire, not because she requested an accommodation, but

because she could not "survive for another year and a half with nothing to do and being told I

needed improvement." *Id.* at 5.

Because Plaintiff has failed to demonstrate genuine disputes of material facts with respect to the required elements of an adverse action and a causal connection, her retaliation claim cannot withstand summary judgment. Therefore, the Court will grant summary judgment in favor of Defendant and will dismiss the Rehabilitation Act and/or Title VII retaliation claim with prejudice.

IT IS THEREFORE ORDERED that DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM BRIEF IN SUPPORT (Doc. No. 29) is GRANTED, with the result that Plaintiff's disability discrimination and retaliation claims and all other claims in her COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETALIATION ON THE BASIS OF DISABILITY (Doc. No. 1) will be dismissed with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE